[No. 1014.  Decided January 6, 1894.]

CLARA KIMBLE AND C. H. KIMBLE, *Appellants*, v. DAVID
FORD, *Respondent*.

CONTRACT FOR SUPPORT—BREACH—RIGHTS OF PARTIES.

Where, under a contract for the support of his parents, a son has
been put in possession of personal property, with the agreement
that it should be his upon the death of the parents, and the son has
executed the agreement for support on his part for a period of
more than ten years, he cannot be deprived of the possession, and
inchoate right of ownership, of such property by the execution of a
bill of sale to another by his parents upon their becoming dissatis-
fied with his manner of fulfilling the terms of the contract.

*Appeal from Superior Court, Skagit County.*

*Frank Quinby*, and *Sinclair & Smith*, for appellants.

*D. H. Hartson*, and *Million & Houser*, for respondent.

The opinion of the court was delivered by

STILES, J.—Plaintiffs alleged that they were the owners
and entitled to the possession of certain personal property,
which the defendant unlawfully withheld from their pos-
session, after demand.    Defendant admitted the withhold-
ing, denied plaintiff's ownership, and alleged ownership in
himself, and adverse possession by him for more than three
years.

Upon the trial it appeared that the plaintiff, Clara Kim-
ble, and the defendant were brother and sister, and that
their controversy arose out of a bill of sale made by the
father and mother of the two parties to the plaintiff named,
in consideration of a promise to support, feed, clothe and
furnish them with medical attendance during their lives.
Levi M. Ford and his wife, the parents, had resided for
many years upon certain land belonging to them in Skagit
county.    They had several children, but these had all left

home and were maintaining themselves elsewhere. Their property consisted of the farm and the usual stock, poultry, machinery and household effects. Advancing years required that they should have assistance, and they proposed to the defendant, who was then a grown man, that he should come and live with and support them; and in return they would convey to him a part of their land, allow him the use of all of it, give him the control and management of the farm and personal property, and at their deaths leave the latter to him. He came and for more than ten years carried out the arrangement to the apparent satisfaction of all parties. A deed was executed to him which was intended to cover the land promised him; and he raised and marketed the crops, bred and reared cattle and other live stock, materially increasing the number on the farm, bought and sold live stock, and added to the machinery. Perhaps a portion of the increase of stock and machinery was paid for with earnings of defendant derived from work performed for others off the farm. He was generally regarded as the owner of everything, and dealt with it without any interference on the part of his father. But just before the bill of sale in question was given there was some difficulty between him and his parents. His father thought that not enough was done for himself and his wife, and the latter was confessedly mistreated on one occasion. It was also rumored that the defendant was planning to sell off the personal property, and go away and cease caring for his parents, thus defrauding them of the complete fulfillment of his agreement; and this led to the making of the bill of sale. Defendant knew nothing of this proceeding until his sister made demand on him for possession of the property, and substantially ordered him to leave the place.

Plaintiffs based their claim upon the absolute right of Ford, sr., and his wife to deal with their own property as

they saw fit, while defendant planted himself upon the ground that he was the owner by an executed agreement with his parents; and, as has been seen, he set up adverse possession by him for a period of three years. The verdict was for defendant, and judgment was entered thereon.

Appellants complain of various errors of the court in admitting testimony and in charging the jury. But as we view the evidence, which is submitted to us under an allegation of insufficiency, be these alleged errors as they may, the conceded facts make the judgment a correct one, and therefore are not to be disturbed for the errors suggested. Appellants were not deprived of any testimony, and so far as any testimony may have been wrongfully admitted against them, it was immaterial in view of the admitted facts.

Here was a case where it is conceded that there was a mutual agreement, put in writing so far as the land was concerned, but remaining in parol as to the personalty, except that the possession of the latter was surrendered to the respondent. For more than ten years this arrangement has been carried out, and it did not, therefore, lie in the power of Ford, sr., and his wife to annul it in the informal way which they adopted. It was a contract which they could have called upon the court of their county to enforce or annul; but property devoted to the performance of the contract by respondent, and delivered to him for that purpose, could not be taken from him summarily, and without consultation with or notice to him. If respondent was threatening to dispose of this property in such a way as to defraud his father and mother, the court would have interfered to prevent him; for although as to innocent third parties he may have had all of the *indicia* of ownership, and could have made good title, as between him and his parents he was not the absolute owner. In conducting the business of the farm he could undoubtedly dispose of

stock and produce in the ordinary way, but he could not make a wholesale disposition of the property committed to him so as to put it beyond the purpose for which he received it.  At the death of his parents, if his rights are not forfeited in some legal way before, his title will become absolute, but not until then.

For these reasons we find the judgment to have been correct; and it is, therefore, affirmed.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.